UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION


BARRY A. ROE                                                      PLAINTIFF

VERSUS                                    CIVIL ACTION NO. 1:11CV321-HSO-RHW

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                                   DEFENDANT


## PROPOSED FINDINGS OF FACT AND RECOMMENDATION

Plaintiff Barry A. Roe filed a [1] complaint appealing the unfavorable decision of the

Commissioner of the Social Security Administration (SSA).  Currently before the Court is Roe's

[9] Memorandum in Support of [1] Complaint, in which he requests that this Court reverse the

decision of the Commissioner and remand the case to the Administrative Law Judge (ALJ) for

further proceedings.  Also before the Court is the Commissioner's [10] Motion to Affirm the

decision  denying disability benefits.

Roe filed an application for social security disability and disability insurance benefits on

March 17, 2008.  He alleged September 20, 2007, as the onset of disability date.  The SSA

denied his application at the initial level and on request for reconsideration.  Roe requested and

received a hearing before an ALJ.  The ALJ conducted the hearing on April 15, 2010.  The ALJ

then issued an unfavorable decision, finding that Roe was not disabled.  The Appeals Council

denied Roe's subsequent appeal of the ALJ's decision.

Roe was 40 years old at the alleged onset of disability, with a high school level education.

He has past relevant work as a joiner, insulator, security officer, and police officer.  He alleges

disability because of an injury to his right arm, knees, and left elbow.  Roe initially injured

himself after falling approximately 30 feet in a work site accident. Although he eventually was able to return to work, he injured his right wrist while using a sledgehammer when working at Northrop Grumman. Roe alleges disability based on the right arm injury and pain in his knees, hips, and left elbow. In testimony at the hearing, Roe indicated that his daily activities consist of doing pretty much nothing.

The medical records indicate that Dr. ChrisWiggins treated Roe for his right wrist injury beginning in September 2007. The right wrist was surgically fused. On October 19, 2007, the hardware and screws were removed from the wrist. Dr. Wiggins later referred Roe to Dr. Thomas B. Barbour, III, because of continued pain in Roe's right wrist. Dr. Barbour performed additional surgery on the wrist. Dr. Frederick N. Meyer also examined Roe as a second opinion at the request of Worker's Compensation. Dr. Meyer suggested that Roe undergo prosthetic replacement.

In his decision, the ALJ outlined the treatment history of these medical doctors, as well as the vocational rehabilitation report prepared by Joe Day, dated October 1, 2008. The ALJ concluded that Roe had severe impairments based on the injuries and procedures to his right wrist, left elbow, and right knee. The ALJ also concluded that Roe had the residual functional capacity to perform sedentary work, except that he requires the ability to change positions from sitting and standing every 45 minutes; cannot do overhead work, even though his right hand is his dominant hand; and is capable of doing an eight-hour workday and 40-hour work week. In his written decision, the ALJ made no specific findings regarding limitations on the use of Roe's hands. However, in the hypothetical presented to the vocational expert at the hearing, the ALJ indicated that Roe could lift up to five pounds with his right hand and up to 10 pounds with his

left hand.  Based on the restrictions identified by the ALJ, the vocational expert testified that Roe is not able to perform any past relevant work.   The vocational expert identified other jobs that exist in significant numbers in the national economy that Roe can perform.  On cross-examination, Roe's attorney questioned the vocational expert regarding fine manipulation, grasping, fingering, and use of Roe's right hand to perform the jobs identified by the vocational expert.  The vocational expert indicated that limitations on Roe's ability to use his right hand for fine manipulation, fingering and grasping would preclude Roe from performing the jobs identified.

At the hearing, the ALJ indicated that Roe could maintain the use of his right hand for an eight-hour day at a sedentary level of work.  The ALJ based this conclusion on the lack of any medical evidence justifying restriction on the use of Roe's right hand.  Following this discussion regarding Roe's ability to use his right hand, the ALJ agreed to send Roe to an orthopedist for a post-hearing examination and residual functional capacity assessment.

Dr. Charlton Barnes performed a post-hearing consultative examination at the ALJ's direction.  Dr. Barnes concluded, in addition to other limitations, that Roe's ability to reach, handle, feel, and push/pull are affected by his impairment--specifically the surgically fused right wrist.  Absent from the ALJ's decision is any mention of the consultative exam and report of Dr. Charlton Barnes.  On appeal, Roe asserts that the ALJ failed to consider or weigh Dr. Barnes opinion with respect to Roe's limitations.

## Law and Analysis

The federal district court reviews the Commissioner's decision only to determine whether the final decision is supported by substantial evidence and whether the Commissioner used the

proper legal standards to evaluate the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). If the court determines the Commissioner's decision to be supported by substantial evidence, then the findings are conclusive and the court must affirm the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *see also* 42 U.S.C. § 405(g). This standard requires supporting evidence that is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court is not permitted to "reweigh the evidence in the record, nor try any issues *de novo*, nor substitute our judgment for the judgment of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988). "'Conflicts in the evidence are for the [Commissioner] and not the courts to resolve.'" *Brown*, 192 F.3d at 496 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). While the court may alter the Commissioner's decision if based upon faulty legal analysis, the court should defer to the Commissioner's legal conclusions if they are within a permissible meaning of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. National Resources Defense Council*, 467 U.S. 837, 843–44 (1984).

A claimant bears the burden of proving the existence of a medically determinable impairment that has prevented the claimant from engaging in substantial gainful employment. 42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 423 (d)(5). The Social Security Administration (SSA) utilizes a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a), § 404.920(a). Under this analysis, the ALJ may decide a claimant is disabled if he finds that (1) the claimant is not employed in substantial gainful activity; (2) the claimant has a

severe, medically determinable impairment; (3) the claimant's impairment meets or equals one of the listings in appendix 1 to subpart P of § 404; (4) the impairment prevents the claimant from performing any past relevant work; and (5) the impairment prevents the claimant's ability to adjust to performing any other work. *Id.*

The claimant initially bears the burden of proving disability under the first four steps, but the burden shifts to the SSA for the fifth step. *Chapparo v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987). Therefore, if the claimant proves that he is unable to perform past relevant work, the SSA must demonstrate that the claimant can perform another occupation that exists in significant numbers in the national economy. The burden then shifts back to the claimant to establish that he cannot perform this alternative employment. *Id*.

Roe raises two arguments with respect to the ALJ's decision. First, he argues that the ALJ erred because he failed to state the weight given to or even mention the post-hearing consultative examination performed by Dr. Charlton Barnes placing limitations on Roe's use of his hands. Second, he argues that the ALJ failed to schedule a supplemental hearing to allow cross-examination of the vocational expert based on Dr. Barnes' report. The Commissioner counters that there was substantial evidence in the record supporting the ALJ's findings with respect to Roe's limitations on use of his hands.

During the hearing, the ALJ presented the vocational expert with a hypothetical regarding Roe's residual functional capacity. The vocational expert identified certain sedentary jobs that Roe would be able to perform consistent with the limitations identified by the ALJ. On cross examination, Roe's attorney questioned the vocational expert about hypothetical restrictions on Roe's use of his hands--fine manipulation, grasping, fingering, etc.--which had not been included

in the limitations attributed by the ALJ.  The vocational expert concluded that, with such limitations, Roe would not be able to perform the jobs previously identified.

At the conclusion of the hearing, the ALJ indicated that he was unwilling to impose any further restrictions on Roe's ability to use his hands because the ALJ concluded that he did not have any medical evidence to justify such restrictions.  Nevertheless, the ALJ ordered a post-hearing orthopedic examination.  In accordance with the ALJ's order, Dr. Barnes conducted a one-time consultative examination of Roe.  Dr. Barnes opined that Roe could frequently lift/carry up to ten pounds and occasionally lift/carry up to ten pounds.  However, Dr. Barnes indicated that Roe's ability to reach, handle, feel, push and pull was affected by his impairments.

The ALJ presented Dr. Barnes findings to Roe and permitted him the opportunity to comment.  Counsel for Roe responded by arguing that a fully favorable decision should be issued based on Dr. Barnes findings.  In the alternative, counsel requested a supplemental hearing with the vocational expert to determine the degree of erosion of jobs at the sedentary level based on Dr. Barnes findings regarding Roes' ability to use his hands.  The ALJ issued an unfavorable decision, but did so without conducting a supplemental hearing and without making any reference to Dr. Barnes' findings or according any specific weight to Dr. Barnes' opinion.

The Social Security Regulations place an affirmative duty on the ALJ to weigh every opinion within the record.  *See Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). Specifically, the Regulations state "regardless of its source, we will evaluate every medical opinion we receive."  20 C.F.R. § 404.1527(c).  Social Security Ruling 96-6p states that with regard to state agency medical consultants "[a]dministrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their

decision." While the ultimate issue of disability is reserved to the ALJ, he must consider all medical opinions. *See* 20 C.F.R. 404.1527. Here, it is undisputed that the ALJ's decision did not evaluate, consider, or explain the weight given to Dr. Barnes' opinion. The decision is simply silent as to Dr. Barnes' opinion.

Violation of a regulation may constitute error and establish a basis for reversal of the agency action and remand unless a reviewing court finds that the error is harmless. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003). Harmless error exists when it is inconceivable that a different administration conclusion would have been reached absent the error. *Id.* The claimant must establish that the ALJ erred and that the ALJ's error casts into doubt the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). The ALJ's failure to discuss a physician's opinion constitutes harmless error where the ALJ attributes limitations consistent with the doctor's opinion. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535-36 (6th Cir. 2001). However, a reviewing court cannot properly find that an administrative decision is supported by substantial evidence when the ALJ reached his or her conclusion by focusing upon one aspect of the evidence and ignoring other parts of the record. *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986).

The question before this Court is whether it is inconceivable that a different administrative conclusion would have been reached if the ALJ had considered Dr. Barnes' opinion. At the conclusion of the hearing, the ALJ stated that he was unable to attribute any limitations to Roe's use of his hands precisely because there was no medical evidence to justify such limitations. In response to this lack of medical evidence, the ALJ ordered an orthopedic consultation. The orthopedist then rendered an opinion suggesting that there are limitations to

Roe's use of hands. Given the centrality of this medical evidence to the issue presented at the hearing and discussed at length with the vocational expert, the undersigned cannot say that the ALJ's error in failing to consider the evidence in his decision was harmless. However, the undersigned makes no finding as to the weight that should be accorded to Dr. Barnes' opinion, nor whether Dr. Barnes' opinion would result in the ALJ reaching a different conclusion. Moreover, the undersigned leaves to the discretion of the ALJ whether additional testimony from the vocational expert or any other individual is necessary before rendering a decision that addresses Dr. Barnes' opinion.

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that the Commissioner's [10] Motion to Affirm be denied and that the matter be remanded for further proceedings.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days

after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed **factual findings and legal conclusions** that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED, this the 13th day of August, 2012.

/s/ *Robert H. Walker*

ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE